CASE 43—PETITION ORDINARY—MAY 8.

# Brent v. Long, et al.

APPEAL FROM FAYETTE CIRCUIT COURT.

1. EJECTMENT—PLEADINGS.—Under the provisions of section 125 of the Civil Code, subsection 2, in an action to recover land the answer of the defendant "must state whether or not he claims it, or any part of it," and without such allegation, if a defendant claims the land he is sued for, he can not be allowed to avail himself, in defending the action, of any advantage derived from any claim he may have to the same.

2. PARTIES—OBJECTIONS FIRST MADE ON APPEAL.—Where a life estate is given to a married woman and her husband, with remainder to "the right heirs" of said husband and wife, on their death without issue, in a suit by the collateral heirs of the husband to recover the land, the collateral heirs of the wife were proper parties; but the defendant in this case having merely denied the plaintiff's allegations of ownership of the land, without asserting any claim or interest therein himself, can not for the first time in this court on appeal complain of said defect of parties.

3. "RIGHT HEIRS."—The expression "to the right heirs of said Henry and Harriet," means those to whom the property would pass by the law of descent.

THORNTON & KERR FOR APPELLANT.

1. The verdict was against the evidence and the overwhelming preponderance thereof.

2. The instructions given by the court predicate the right of recovery by appellees of the entire strip of land in question upon the theory that they were the heirs of Henry Long, when the evidence shows that one-half of the property never belonged to Henry Long, but passed under the Whitney deed to the "right heirs" of Harriet Long.

3. The first and controlling instruction in the case is so involved and confused, in its phraseology and construction, as to have made it difficult to understand and very misleading.

Z. GIBBONS AND NELMS & BICKERS FOR APPELLEES.

1. The defendant's answer presented no defense to the action, as it failed to deny that the plaintiffs were entitled to any of the land, or to assert any interest or claim therein himself.    (Sec. 125 Civil Code.)

2. There having been no plea of estoppel by defendant, he was entitled to no instruction on that question, and the court properly refused to give same.

3. This court will not reverse upon the ground that the verdict is contrary to the evidence unless it is plainly and palpably so. (Thompson v. Thompson, 93 Ky., 435.)

JUDGE LANDES DELIVERED THE OPINION OF THE COURT.

The appellees sued the appellant in the Fayette Circuit Court to recover a small strip or parcel of land fronting on Third street, between Broadway and Mill streets in the city of Lexington, and described as running back at right angles with Third street "one hundred feet, more or less, to Frazier's line."   They alleged that they were the owners and entitled to the possession of this strip or parcel of land, and that the appellant "now holds and has for the last three years wrongfully held said land, and kept plaintiffs out of possession thereof."

The chain of title under which they claimed the land was not set out in the petition, but the title papers introduced in evidence and the testimony of witnesses tended to establish the fact that the land sued for was a part of a lot that was conveyed by William W. Whitney to Samuel Long, by deed bearing date the 28th day of May, A. D., 1844, in trust for Henry Long and Harriet Long, his wife, with remainder over after their death, which deed will be more particularly referred to hereafter.

In his answer the appellant denied that the plaintiffs were "the owners or entitled to the possession of the strip,

parcel or lot of land" described in the petition. This was followed by the further denial "that he *now holds* or for the last three years, or for any length of time, has *wrongfully held* the said land, or that he has *wrongfully kept the plaintiffs out of possession* thereof for any length of time." No claim was made by the appellant in his answer that he was the owner of the strip of land sued for, or of any part of it, or that he was for any reason entitled to the possession of it.

The Whitney deed of May 28, 1844, under which the appellees claim decribes the lot conveyed to Samuel Long in trust as follows: "Beginning on the southwest side of Third street, thirty-five feet from the lower side of an alley running from Third to New street, being the corner of what was formerly Henry Cassell's lot, thence with Third street thirty-five feet, more or less, towards Main Cross street, now Broadway; thence parallel with Broadway eighty feet, more or less, towards New street; thence parallel with New street thirty-five feet, more or less, to said Cassell's lot; thence with said Cassell's lot eighty feet, more or less, to the beginning."

The trust declared was in substance for the use and benefit of Harriet Long during her natural life, who was to be permitted uninterruptedly to use and enjoy it as her separate property during her life, with power in the trustee, on her request, to exchange or to sell it, and to re-invest the proceeds in other property upon the same trusts, etc., "and, after the said Harriet Long, remainder to said Henry Long for and during his natural life; and, after the death of said Henry, remainder to said Caroline Long and the heirs of the body of said Henry, of his said wife Harriet, begotten; or, in case of the death of said Caroline during the life of either the said Henry or the said Harriet, and in default of said

heirs of the body of said Henry, *remainder to the right heirs of said Henry and Harriet* in fee simple forever."

Caroline Long, whose name appears in the foregoing extract, was named at the beginning of the deed as one of the beneficiaries, and was the only child of Harriet by a former husband, and died before the death of either said Henry or Harriet. Henry died before Harriet, without issue, and, although the latter married again after the death of Henry, she died without ever having had other issue besides Caroline.

By the deeds offered in evidence the title to this lot was traced regularly back to Thomas January, who, by deed bearing date the 2d day of December, A. D., 1817, conveyed it to Stephens & Winslow, every deed giving "thirty-five feet, *more or less*," as the frontage of the lot on Third street, except the last-named deed, which gave it as *"thirty-five feet."*

The testimony also showed that the appellant was the owner of a lot adjoining the lot claimed by the appellees under the chain of title running back, as stated, to Thomas January, and lying between the said lot and Broadway, and the deeds in the chain of his title describe his lot as fronting eighty feet on Broadway, and running back from Broadway, with Third street, towards Mill street *one hundred feet.* His title is traced back to the said Thomas January, who, by deed dated the 12th day of November, A. D., 1821, conveyed the said lot to William Macbean.

It appears from the face of this deed that the grantor, several years before it was made, had given his bond to the grantee for a title to this and another lot embraced in the deed, as the statement is made that the deed was executed "in conformity with my bond to said Macbean, dated 14th January, 1814."

The evidence further shows that the appellant purchased this lot during the lifetime of Harriet Long, and while she was in possession of the lot claimed by the appellees, and that, in enclosing his lot, in order to get the depth of one hundred feet called for in his deed, he took within his enclosure a few feet of ground that had been within the enclosure of and that was claimed by Harriet Long, and that are now claimed by the appellees as part of the lot embraced in the deeds from Thomas January in 1817, down to that of William W. Whitney in 1844.

As we have seen under the Whitney deed the "right heirs" of Henry and Harriet Long—that is, those who under the law of descent would inherit the property of each of them in case he or she died intestate—were made the ultimate remaindermen, contingent upon the death of Caroline, during the life of either of them, and upon the death of Henry without heirs of his body. Consequently, at the death of Harriet, the last survivor, Caroline having previously died, and Henry having left no heirs of his body, the title to the lot vested absolutely in their "right heirs." The evidence in the case tended to show, and there was no conflict on that question, that the appellees were the only surviving collateral heirs of Henry Long; but there was no testimony showing that any of the appellees were the collateral heirs of Harriet, who died in the year 1887, or who were her heirs.

The issues raised and presented by the pleadings which we have quoted were narrowed down to the questions:

1st. Whether the appellees had any title under which they had the right to claim the possession of the strip of ground sued for; and,

2d. Whether the appellant was in possession of it, or of any part of it.

No question was raised in the pleadings, or at all so far as the record shows, as to any defect of parties, nor does it appear that any resistance was made in the court below to a recovery by the appellees on the ground that the "right heirs" of Harriet Long were not joined as plaintiffs with the appellees.

At the conclusion of the testimony the court, on its own motion, gave four instructions to the jury, all of which were excepted to by the appellant. In the first instruction the court submitted in proper form the question of the relation of the appellees as heirs of Henry Long, and told the jury in substance that if the heirship was established by the evidence, and if the strip of land in controversy was embraced in the said deed from Thomas January to Stephens & Winslow, and if the appellees derived their title to the land sued for from those claiming under the latter, and if the appellees, or those, or any of them under whom they claimed, were in the possession of the said land at the time the appellant enclosed it, or if the land in controversy was not embraced in the said deed from Thomas January to Stephens & Winslow, but was embraced in the deed from said January to William Macbean, and that the appellees, or those under whom they claimed had the land in controversy in their possession and claimed it as their own continuously, notoriously and uninterruptedly for a period of fifteen years before the appellant took possession of it, that the law was for the appellees, and that they should so find.

In the second instruction the jury were told that they should find for the appellant, unless they believed from the evidence that the appellees were entitled to recover under the state of facts submitted in the first instruction.

They were then told that if they found for appellees they should state in their verdict the amount of land they were entitled to recover, and find for them a sum which would fairly compensate for being deprived of the land by appellant from the time it was wrongfully taken to the date of the trial. By the last instruction the jury were directed, in case they found for appellant, to so state, and no more.

The testimony was conflicting as to the number of feet of ground claimed by appellees that were enclosed by the appellant as part of his lot, but under the foregoing instructions the jury in their verdict found the number to be three feet and three and one-half inches; and, as their finding on that question seems to be sustained by a preponderance of the evidence, the verdict ought not to be disturbed on account of the conflicting testimony.

The material question to be decided is as to the correctness of the first instruction. Unquestionably if Harriet, who was the wife of the said Henry Long, and who survived him, left heirs surviving her, they became entitled at her death, under the Whitney deed, as joint tenants with the appellees to an interest in the lot embraced in said deed, including the strip of ground sued for in this action, if it was a part of said lot and embraced in the deed.

It is insisted that the heirs of Harriet ought to have been joined as plaintiffs in the action with appellees; but, no objection having been made in the court below on account of the failure to join them, we hold that, although they would have been proper parties to the action upon the issues made in the pleadings, the attitude of the appellant is such that he can not be allowed to make the objection for the first time in this court. The Civil Code (section 125, subsection 2) provides that, in an action for the recovery

of land, "the answer of the defendant must state *whether or
not he claims it, or any part of it.*" This requirement, we
hold, is imperative, the defendant "*must state,*" etc.

In Bailey, &c. v. McConnell, &c., 12 Ky. Law Rep.,—'
which was an action to recover land, this court held that
the answer of the defendants was defective, because it did
not contain the statement required by the Code above
quoted. Without such statement, if a defendant claims the
land he is sued for, he can not be allowed to avail himself,
in defending the action, of any advantage derived from
any claim he may have to the land. He can not be allowed
to assert his title to the land in such an action as against
the conflicting claim of the plaintiff on the mere denial that
the plaintiff's title or claim of right of possession is
good. In this case the appellant, in his answer, saw proper
only to deny the right and title of the appellees to the land
sued for and that he then held it. The denial that he had
wrongfully held the land or that he had wrongfully
kept the appellees out of possession for the time
alleged in the petition, or for any length of time, can
not be considered as a sufficient denial of anything alleged
in the petition, and no more can it be considered an asser-
tion of his right to the land. So that, upon the issues made,
the appellees could not be held to prove anything more
than that they had such a title to the land they were suing
for, as would give them the right of possession, and that
the appellant was in possession of the land they claimed
in the action. If the evidence established their right to
the land as right heirs of Henry Long under the Whitney
deed, they certainly had the right of possession as against
a wrongdoer, even though they were joint tenants with
the right heirs of Harriet. It was upon this view, evidently,

Brent v. Long, et al.

that the first instruction was based, and we hold that, upon the issues made in the action, the court did not err in giving it, and that the substantial rights of the appellant were not prejudiced by the fact that the heirs of Harriet were not made parties to the action. In this view of the case the other instructions that were given are free from error.

Certain instructions were asked for by the appellant and refused by the court, and this is also complained of as error. They are not numbered, and, therefore, must be considered as a whole.

After carefully examining them we are not able to see that there is anything, either in the pleadings or the evidence, that would have justified the court in giving them. What was requested in respect to an estoppel would have been clearly erroneous, because an estoppel was not set up in the answer as a defense to the action, and also because there was no evidence upon which to base it. The proposed instruction as to what would not have been evidence sufficient to establish the true line between the lots of plaintiffs and the defendant would have been error, if for no other reason, that it would have been making the court, instead of the jury, the judge of the weight and effect of the evidence. And then it would have been improper to instruct the jury with regard to the abstract proposition of law that, where both parties to an action for the recovery of land claimed title through the same person or from the same source, neither party is required "to show title back of that person" or source, and as to what would be the result of that proposition of law in this action as bearing on the rights of the parties to the action, because that would be submitting the question of appellant's title to the jury, which, as we have seen, could not be permitted upon the issues made by the pleadings.

What we have held with reference to the first instruction is decisive of this case, and the alleged errors with regard to the testimony allowed or refused need not be noticed; and, finding no error prejudicial to the substantial rights of the appellant, the judgment is affirmed.